United States District Court
District of South Carolina

| | | |
|---|---|---|
| Curtis Dale Richardson, # 269166; | ) | C/A No. 4:05-1075-RBH-TER |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| Horry County Sheriff's Department; Philip Thompson, Sheriff of Horry County; Horry County Solicitor's Office; Gregory Hembree, Solicitor of Horry County; SC Department of Corrections; SCDC Classification Department; Ms. Long Kershaw, Classification Supervisor; Mr. Goldberg, Classification Caseworker; Mr. Faulkenberry, KCI Warden; David Tatarsky, Office of the General Counsel; and Jon Ozmint, Each in individual and official capacities; | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiff, Curtis Richardson (hereafter, "the Plaintiff"), is a state prisoner proceeding *pro se*. He seeks relief pursuant to Title 42 United States Code section 1983. Under 28 U.S.C. §636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in prisoner cases filed under 42 U.S.C. §1983 and submit findings and recommendations to the District Court.

**BACKGROUND**

The Plaintiff is incarcerated at Kershaw Correctional Institution (KerCI) in Kershaw, South Carolina, serving a sentence of twelve years imprisonment on a burglary conviction. The narrative from the Complaint is presented below verbatim:

> On September 6, 2000, the Horry County Sheriff's Office lodged approx (24) twenty four detainers against me request the S.C.D.C. the confirm the same. However in 2001 all of these (24) charges were disposed of through dismissal,

1

> nolle pross etc.  In 2001 I voiced my complaints with the Sheriff's Department of Horry County, the prosecutors of Horry County, the South Carolina Dept of Corrections Classification Personnel, the Kershaw Correctional Institution Warden via written requests and the filing of grievances as well as multiple visits to the Classification Office with and as follow-up on grievances and in person presenting the notifications and documentation of the dismissals, nolle press etc of the (24) charges as confirmation that the entries are false and could not continue or be used to determine my custody classification parole consideration etc.  These entries have caused me to be denied (false intries [sic]) participation in work release programs, better custody level, better institutional facilities.  I forwarded a motion for expungement of records to the Solicitor of Horry County.  However, the Solicitor refused my expungement request.  I also forwarded to the Solicitor the "Order" from the Chief Justice of the Supreme Court of South Carolina dated July 11, 2003 (copy attached) stating that no fee shall be charged for expungement of criminal record pursuant to S.C. Code Ann. 17-1-40, where the charge was discharged, dismissed, nolle prossed or the applicant was acquitted.  I further presented a copy of this material to the Sheriff's Department, the Classification Department and sent a copy to the Warden and General Counsel which are the attorneys for the South Carolina Department of Corrections to no available.  These false entries were also relied on by  the Parole Board in June of 2003 to deny my parole.
> This complaint was also lodged with John Ozmint Director of SCDC .  This false information used by SCDC has denied me from access to programs of similarly situated inmates who have the same charge and same amount of time, and denied my right to procedural due process.  I am not challenging my incarceration or the fact of such.  I only seek damages and compensation for this denial of procedural due process for all of these years in which I have been punished due to these unconstitutional false entries.  A prisoner has a right to challenge the veracity of his prison file when false information has been used to or relied on to a constitutionally significant degree, see Williams v. Stacy D.C.Va. 1979, 468 F. Supp 1206 and Cornwell v. the State of Maryland, 396 F. Supp. 1092.  This action by the defendants has caused me mental distress and emotional and psychological damage in which I continue to seek treatment for.  Mental distress caused by a denial of procedural due process is compensable under section 1983; injury need not occur, see James v. Board, 484 F. Supp 705.  The U.S. Supreme Court held in Carey v. Piphus, 98 S. Ct. 1042, because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, see Boddie v. Connecticut , 401 U.S. 371, 375, 91 S. Ct. 780, 784, 28 L. Ed. 2d 113 (1971); Anti-Fascist Committee v. McGrath, 341 U.S. at 171-172, 71 S. Ct. at 648-649 (Frankfurter J. concurring), ["] We believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.  The Plaintiff is also being subjected to this unconstitutionality by the defendants in retaliation for the plaintiff's filing of prior lawsuits which are currently pending.

[1-1, pp. 3-5.]

The Plaintiff demands Twenty Thousand Dollars ($20,000.00) damages from each of the Defendants.

## *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. Hughes v. Rowe, 449 U.S. 5 (1980); Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972); Loe v. Armistead, 582 F. 2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F. 2d 1147 (4th 1978).   *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, supra. Even under this less stringent standard, however, a *pro se* complaint is still subject to summary dismissal.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  Small v. Endicott, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## EMOTIONAL DISTRESS

The Plaintiff complains that he has suffered emotional distress.  Under the Prison Litigation Reform Act of 1996, 42 U.S.C. 1997e(e), monetary damages cannot be awarded on such a claim:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

As a matter of law, this element of the Plaintiff' Complaint fails to state a claim upon which relief may be granted.

## **DENIAL OF PAROLE**

Basically, the Plaintiff contends that a denial of parole in June 2003 gives rise to a cause of action against the Defendants. It is well settled, however, that prison inmates have no constitutionally protected right of parole release. The holdings of the United States Supreme Court in <u>Board of Pardons v. Allen</u>, 482 U.S. 369 (1987) and <u>Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,</u> 442 U.S. 1, 7 (1979) both confirm this proposition. The particular language of the Montana and Nebraska parole statutes prompted the Court in those cases to find the applicants had been afforded an "expectation of release" and thus a liberty interest.

In both cases, the statutory scheme provided that an inmate "shall" be released on parole <u>unless</u> certain conditions obtained. By contrast, the South Carolina statutory scheme is permissive rather than mandatory. The Department of Probation Parole, and Pardon Services (DPPPS) – formerly known as the Parole Board – may grant parole only when the applicant has met established criteria:

> The board must carefully consider the record of the prisoner before, during and after imprisonment, and no such prisoner may be paroled until it appears to the satisfaction of the board: that the prisoner has shown a disposition to reform; that, in the future he will probably obey the law and lead a correct life; that by his conduct he has merited a lessening of the rigors of his imprisonment; that the interest of society will not be impaired thereby; and, that suitable employment has been secured for him. The board must establish written, specific criteria for the granting of parole and provisional parole. This criteria must reflect all of the aspects of this section and include a review of a prisoner's disciplinary and other records. The criteria must be made available to all prisoners at the time of their incarceration and the general public,

The South Carolina statute creates no expectation of release. Even if this restrictive statute could be read to create a liberty interest, the Fourth Circuit has held that the only due process to which he would be entitled is a statement of the reasons for denial of parole. <u>Vann v. Angelone</u>, 73 F.3d 519, 522 (4th Cir.1996). A federal court must not involve itself in the

refinement of a state's parole statute or its individual parole decisions.  Id.

In compliance with the statutory directive, DPPPS has published its criteria.  They are described in 26 SOUTH CAROLINA JURISPRUDENCE § 18:

> These criteria are: (1) the risk that the prisoner poses to the community; (2) the nature and seriousness of the prisoner's offense, the circumstances surrounding that offense, and the prisoner's attitude toward it; (3) the prisoner's prior criminal record and his adjustment under any previous programs of supervision; (4) the prisoner's attitude toward his family, the victim, and authority in general; (5) the prisoner's adjustment while in confinement, including his progress in counseling, therapy, and other similar programs designed to encourage the prisoner to improve himself; (6) the prisoner's employment history, including his job training and skills and his stability in the workplace; (7) the prisoner's physical, mental, and emotional health; (8) the prisoner's understanding of the causes of his past criminal conduct; (9) the prisoner's efforts to solve his problems; (10) the adequacy of the prisoner's overall parole plan, including residence and employment; (11) the willingness of the community into which the prisoner will be paroled to receive that prisoner; (12) the willingness of the prisoner's family to allow him to return to the family circle; (13) the opinion of the sentencing judge, the solicitor, and local law enforcement on the prisoner's parole; (14) the feelings of the victim's family, as well as the feelings of any prosecuting witnesses to the crime, about the prisoner's release; (15) any other factors the Board may consider relevant.

A denial of parole can be based upon any combination of the fifteen criteria listed above. The Plaintiff provides to this Court no facts regarding his parole denial in 2003.  There is nothing before this Court to suggest that parole would have been granted but for the existence of the "detainers" which he describes.

## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a) provides: "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The United States Supreme Court has held this to be a mandatory provision which "applies to all inmate suits about prison life, whether

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002).

As attachments to his Complaint, the Plaintiff has filed documents which reveal that he actually began a pursuit of administrative relief in recent months. Within the South Carolina Department of Corrections (SCDC) he has filed three grievances in a row (KerCI #0010-05, #0059-05 and #0289-05) which were returned for failure to initiate informal resolution. He provides no indication that has complied with the procedures provided by the SCDC system for inmate grievances. The Plaintiff attaches correspondence with the Horry Solicitor, Horry County Clerk of Court, and the SC Department of Probation, Parole and Pardon Services (SCDPPPS) which commenced in January, 2005. The response from SCDPPPS (dated March 25, 2005) indicates that his letter denying the various pending charges has been placed in his file for future parole consideration.

There is no evidence that the Plaintiff took any action prior to the alleged parole denial in July 2003. It does not appear that he appealed that denial because the "detainers" had been dismissed. The Plaintiff has failed to seriously pursue relief through the various administrative and judicial processes available in South Carolina.

## §1915 SCREENING

Under 28 U.S.C. § 1915 a District Court may dismiss a pleading by an indigent and/or *pro se* litigant upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." § 1915(e)(2)(B)(I), (ii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hemandez, 504 U.S. 25 (1992). Hence, under § 1915(e)(2)(B), a claim based on a meritless

6

legal theory may be dismissed *sua sponte*. Neitzke v. Williams, 490 U.S. 319 (1989); Allison v. Kyle, 66 F.3d 71 (5th Cir. 1995).  The court may dismiss a claim as "factually frivolous" under §1915(e) if the facts alleged are clearly baseless.  Denton v. Hernandez, supra.   In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor.  Id.

## RECOMMENDATION

The Defendants should not be required to answer this action.  It is therefore recommended that the within Complaint be dismissed without prejudice and that this dismissal be deemed a strike under the "three strikes" rule of 28 U.S.C. § 1915(g).  Plaintiff's attention is directed to the Notice on the following page.

                                                Respectfully Submitted,

                                                s/Thomas E. Rogers, III
                                                Thomas E. Rogers, III
                                                United States Magistrate Judge

June 21, 2005
Florence, South Carolina

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
& The Serious Consequences of a Failure to Do So**

The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

Accord Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice apprises the petitioner of the consequences of a failure to file specific, written objections.** See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
P.O. Box 2317
Florence, South Carolina 29503
